❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.    21-863M(NJ) |
| Information associated with the Facebook user ID | ) | |
| 100028589742482 that are stored at premises owned, | ) | |
| maintained, controlled, or operated by Facebook Inc., a | ) | |
| company headquartered in Menlo Park, California. | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:       Any authorized law enforcement officer

      An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

  See Attachment A.

      I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

  See Attachment B.

      **YOU ARE COMMANDED** to execute this warrant on or before _____ April 13, 2021 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

      Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

      The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Nancy Joseph _____ .
                                                                       *(United States Magistrate Judge)*

      ❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____ March 30, 2021 @ 1:11 p.m. _____

                                                                                     *Judge's signature*

City and state: _____ Milwaukee, Wisconsin _____          _____ Nancy Joseph, U.S. Magistrate Judge _____
                                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100028589742482 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

1

# ATTACHMENT B

## Particular Things to be Seized

## I. Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for Facebook Username "DEVON MOORE," Facebook User ID # 100028589742482.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **January 1, 2020**, **to December 23, 2020**;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them,

1

including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from **January 1, 2020, to December 23, 2020,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

2

(i)     All records of the account's usage of the "Like" feature, including all

Facebook posts and all non-Facebook webpages and content that the

user has "liked";

(j)     All information about the Facebook pages that the account is or was a

"fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from

**January 1, 2020**, **to December 23, 2020**;

(m)    All information about the user's access and use of Facebook

Marketplace;

(n)     The types of service used by the user;

(o)     The length of service (including start date) and the means and source

of any payments associated with the service (including any credit card

or bank account number);

(p)     All privacy settings and other account settings, including privacy

settings for individual Facebook posts and activities, and all records

showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any

person regarding the user or the user's Facebook account, including

contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the

government within 10 days of issuance of this warrant.

3

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2119(1) (carjacking), 18 U.S.C. § 924(c) (possessing and/or brandishing a firearm during a crime of violence), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm) involving Devon MOORE, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Devon MOORE and others related to the relevant offense conduct of illegal use and possession of firearms and carjacking;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of

4

firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b. such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

1

2.    the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                                    Signature

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with the Facebook user ID<br>100028589742482 that are stored at premises owned,<br>maintained, controlled, or operated by Facebook Inc., a<br>company headquartered in Menlo Park, California. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.<br>   21 863M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the    Eastern    District of    Wisconsin   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  ☑ evidence of a crime;

  ☑ contraband, fruits of crime, or other items illegally possessed;

  ☐ property designed for use, intended for use, or used in committing a crime;

  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2119(1); 924(c); 922(g)(1), and 924(a) (2) | Carjacking; Possessing and/or brandishing a firearm during a crime of violence; Felon in possession of a firearm |

The application is based on these facts:

See Attached Affidavit

  ☑ Continued on the attached sheet.

  ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Heather Wright
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ _____ _____ *(specify reliable electronic means)*.

Date:    03/30/2021

_____
*Judge's signature*

City and state:    Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Heather Wright, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search

1

warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3. Based on my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2119(1) (carjacking), Title 18, United States Code, Section 924(c) (possessing and/or brandishing a firearm during a crime of violence), and Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (felon in possession of a firearm) have been committed by Devon D. MOORE (MOORE), DOB 5/22/92. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

2

## PROBABLE CAUSE

### Carjacking

6.     On November 7, 2020, at approximately 4:52 a.m., Milwaukee Police Department (MPD) officers responded to the area of 2532 N. Vel R. Phillips Avenue, Milwaukee, Wisconsin, to investigate a reported robbery. The victim of the robbery, Victim 1, provided an account of what happened to officers. According to Victim 1, on November 7, 2020, at approximately 2:00 a.m. or 2:30 a.m., Victim 1 and her friends, Latrese Patterson (LP) and S. Perkins (SP), went to a house party in the neighborhood of N. 23rd Street and Keefe Avenue in Milwaukee, Wisconsin. The three individuals took Victim 1's vehicle to the party. After approximately fifteen minutes at the party, Victim 1 left the party and returned to her home, leaving LP and SP at the party. Victim 1 remained in contact via text message with LP and SP while they were at the party. When LP and SP were ready to go home, Victim 1 drove twenty minutes back to the party to provide SP and LP a ride home. LP and SP were sisters and they lived at the same location.

7.     When Victim 1 arrived back at the party, an unknown black male, approximately 5'7", thin build, with a light complexion, got into her front passenger seat. Victim 1 reported that the male had hair that was braided in square designs, and he had a tattoo on his right forearm. He was wearing a white T-shirt and dark pants. According to Victim 1, Victim 1 and the male began talking and he explained that he knew LP and he had previously seen Victim 1 at the party. Victim 1 and the male discussed how they were both Geminis and he showed her his ID to confirm.

3

Victim 1 recalled that she observed the first name was "Devon" and believed his date of birth had been May 22, 1982.

8.    According to Victim 1, LP and SP then got into the back seat of the vehicle. LP told Victim 1 that "Devon" was her cousin. LP spoke highly of "Devon" and told Victim 1 that he was a good guy. "Devon" denied being LP's cousin.

9.    Victim 1 drove to LP's house. LP and SP got out of the vehicle; however, "Devon" did not get out. Victim 1 believed that "Devon" wanted to go home with Victim 1. Victim 1 told "Devon" that he could not come to Victim 1's house, but she would drive him where he needed to go. Victim 1 reported that "Devon" stated that he wanted to go to N. 3rd Street and W. Wright Street, and "Devon" instructed her where to drive and turn. "Devon" instructed Victim 1 to stop in an alley near 2620 N. Martin Luther King Drive. "Devon" asked for a goodbye hug, and Victim 1 got out of the vehicle as "Devon" came around to the driver's door. Victim 1 stated she thought they were going to hug. However, "Devon" began to grab the purse that was around Victim 1's shoulder. Victim 1 was confused and pulled back on the purse. "Devon" then began punching Victim 1 in the head and stated "Do you think I'm playing?" Victim 1 then reported that "Devon" produced a silver on top of black large handgun, pointed it to the ground, and fired one shot.

10.    After "Devon" shot the firearm, Victim 1 gave her purse to "Devon." "Devon" took her purse, got into the driver's seat of her vehicle, and told her to "start walking" as he drove slowly next to her. Victim 1 thought "Devon" may have let her back in the car, but then he told her to start running as he increased speed

4

of the vehicle. As they exited the alley and onto the street, Victim 1 observed a van driving by, ran away from her vehicle, and hid behind a concrete wall. Victim 1 then ran to a gas station located near N. 4th Street and W. Center Street and called 9-1-1.

11.     When officers arrived on scene, they observed swelling to Victim 1's left cheek and a small amount of dried blood on her left ear.

12.     On November 7, 2020, at 7:39 a.m., Victim 1's vehicle was reported to be abandoned in the alley near 215 W. North Avenue. At approximately 8:10 a.m., MPD officers were dispatched to the area. There, officers located Victim 1's stolen 2019 Toyota Camry, which had significant damage to the front end and a broken rear windshield. Victim 1's phone and purse were not recovered inside the vehicle.

13.     Later that same day, at approximately 8:28 a.m., MPD officers were dispatched to the area near 2600 block of N. 2nd Street, in the west alley. Upon arrival, officers located Victim 1, who stated that she had been driving near the area of the incident after leaving the police station and located her glasses and a casing in the alley near 2720 N. Dr. Martin Luther King Drive. The 9mm casing was placed on MPD inventory.

### Identification and Arrest of Devon MOORE

14.     On November 8, 2020, at approximately 3:30 p.m., Victim 1 contacted law enforcement, stating that she had located "Devon" on Facebook through searching LP's Facebook account. Victim1 stated that the account located was under the name "**DAVON MOORE**." Victim 1 described "Devon's" profile picture as a light complected black male wearing a black shirt, with two cornrow style braids

5

to the back. In reviewing "Devon's" page, Victim 1 located photos of guns, including one photo that contained a gun that Victim 1 believed looked similar to the gun that was used during the robbery. Victim 1 stated that the date of birth listed on the Facebook page was May 22, 1991. Victim 1 stated that the Facebook page of LP that Victim 1 used to locate "Devon" contained a profile picture of a black female wearing a light blue shirt, large hoop earrings, with braided hair.

15. Victim 1 also stated that she believed that it was possible that LP had "set her up" since LP knew "Devon" well and he entered her vehicle at the party even though she had never met him prior.

16. Victim 1's vehicle, a 2019 Toyota Camry, was processed for latent fingerprints by a Latent Print Examiner. The Latent Fingerprint Examiner compared Lift #1, recovered from the exterior driver's door gloss black door trim, with Devon D. MOORE (DOB: 05/22/1992). The Lift recovered was identified as the left index finger of MOORE.

17. On November 7, 2020, the 9 mm casing found at the scene of the carjacking was viewed and entered into the Integrated Ballistics Identification System (IBIS). On December 31, 2020, the casing revealed a connection to a Smith & Wesson, 9mm pistol, recovered on December 15, 2020, during a traffic stop.

18. On December 22, 2020, at 4:18 p.m., MOORE was located at 3046 N. 38th Street in the City of Milwaukee. The subject was observed exiting the address and was subsequently taken into custody.

6

19.     On December 22, 2020, at 8:30 p.m., a photo array was presented to Victim 1 by an MPD detective. The array was conducted with six booking photos, with one photo placed in one of six folders, in a random order, leaving folders 7 and 8 intentionally blank. The detective shuffled the folders before presenting them. Victim 1 viewed the photo array and positively identified Devon D. MOORE as the individual that carjacked her and fired a pistol into the ground near her.

Devon MOORE's Facebook Account

20.     On March 2, 2021, I located MOORE's Facebook page under the profile name "**DEVON MOORE**," **Facebook Account ID # 100028589742482**. I observed five photos within the profile containing multiple firearms. The five photos were all posted on October 29, 2020, and all have a caption at the top of each photo. When viewed together, the captions on the photographs read: "Do We Have A Problem."

21.     Photo 1, depicted below, shows the right hand of a person holding up a black handgun with a scope attached to the top of the gun with the caption "Do."



7

22. Photo 2, depicted below, shows a male with a tattoo on his right arm and another on the outside of this right hand, holding a black with wood assault rifle with an extendo. The caption "We" appears above the image, over the individual's face. The male is wearing a black T-shirt and black jeans. The male has a tattoo on his right forearm with a star. I reviewed the Facebook photos associated with MOORE, some of which depicted MOORE's face. I was able to match the tattoo in Photo 2 to the tattoo worn by MOORE in those photos depicting his face. Victim 1 also described "Devon" as having a tattoo on his right forearm.



23.     Photo 3, depicted below, shows a light complected black male holding two silver handguns with the barrels pointing at the camera. The male is wearing a silver chain and the photo contains the caption "Have" over the individual's face. The male is wearing a white, ribbed, tank top, has black hair, and has at least a small amount of black facial hair on his chin.



24.     Photo 4, depicted below, shows two silver handguns. One of the handguns is a silver over black/gray Smith & Wesson and is stamped with the manufacturing location of Smithfield, MA. This gun is consistent with Victim 1's description of the gun used in the carjacking. The second, smaller of the two handguns, is stamped with "KEL TEE" and has an extended magazine. The photo contains the caption "A."



25.     Photo 5, depicted below, shows four guns laying on what appears to be a vehicle rear seat. Two of the guns are handguns. One of the handguns is silver over black in color (possibly the same gun as in Photo 4) and the second is black with a light mounted underneath the barrel (possibly the same gun as in Photo 1). The third gun appears to be a Mac or a Tech, black in color, with an extended magazine. The fourth gun appears to be a shotgun, black in color. The photo contains the caption "Problem."



26.     MOORE has been convicted of two counts of felon in possession of a firearm. *See State of Wisconsin v. Moore*, Milwaukee County Case Number 2011CF77. Accordingly, he is prohibited from possessing firearms.

27.     On March 2, 2021, law enforcement sent a preservation letter to Facebook requesting the preservation of records for **Facebook Account ID # 100028589742482**.

28.     Based on my training and experience, I am aware that individuals involved in criminal activity, including violent offenses with firearms, have also used websites and third-party applications, such as Facebook, to communicate regarding their illegal activity and flaunt illegal firearms.

29.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

30.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

31.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend

12

Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

32.    Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

33.    Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at

13

particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

34. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

35. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

14

36.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

37.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

38.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

39.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

40.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

41.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

15

42.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

43.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored

16

electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or

17

consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

46. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B1 and B2. Upon receipt of the information described in Section I of Attachment B1 and B2, government-authorized persons will review that information to locate the items described in Section II of Attachment B1 and B2.

## CONCLUSION

47. Based on the foregoing, I request that the Court issue the proposed search warrant.

48. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time

18

convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

49.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

50.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

<u>**ATTACHMENT A**</u>

**Property to Be Searched**

This warrant applies to information associated with the Facebook user ID 100028589742482 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

1

## ATTACHMENT B

### Particular Things to be Seized

## I.  Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)  All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for Facebook Username "DEVON MOORE," Facebook User ID # 100028589742482.

(b)  All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **January 1, 2020, to December 23, 2020**;

(c)  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them,

1

including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from **January 1, 2020, to December 23, 2020,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

2

(i)     All records of the account's usage of the "Like" feature, including all

        Facebook posts and all non-Facebook webpages and content that the

        user has "liked";

(j)     All information about the Facebook pages that the account is or was a

        "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from

        **January 1, 2020**, **to December 23, 2020**;

(m)     All information about the user's access and use of Facebook

        Marketplace;

(n)     The types of service used by the user;

(o)     The length of service (including start date) and the means and source

        of any payments associated with the service (including any credit card

        or bank account number);

(p)     All privacy settings and other account settings, including privacy

        settings for individual Facebook posts and activities, and all records

        showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any

        person regarding the user or the user's Facebook account, including

        contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the

government within 10 days of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 2119(1) (carjacking), 18 U.S.C. § 924(c) (possessing and/or brandishing a firearm during a crime of violence), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (felon in possession of a firearm) involving Devon MOORE, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Devon MOORE and others related to the relevant offense conduct of illegal use and possession of firearms and carjacking;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of

4

firearms and sale and use of controlled substances, including records

that help reveal their whereabouts.

This warrant authorizes a review of electronically stored information,

communications, other records and information disclosed pursuant to this warrant

in order to locate evidence, fruits, and instrumentalities described in this warrant.

The review of this electronic data may be conducted by any government personnel

assisting in the investigation, who may include, in addition to law enforcement

officers and agents, attorneys for the government, attorney support staff, and

technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of

the disclosed electronic data to the custody and control of attorneys for the

government and their support staff for their independent review.

5

<u>CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO
FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)</u>

I, _____, attest, under penalties of perjury by

the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the

information contained in this certification is true and correct.  I am employed by

Facebook, and my title is _____.  I am qualified to

authenticate the records attached hereto because I am familiar with how the

records were created, managed, stored, and retrieved.  I state that the records

attached hereto are true duplicates of the original records in the custody of

Facebook.  The attached records consist of _____ **[GENERALLY**

**DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of

the occurrence of the matter set forth by, or from information transmitted by, a

person with knowledge of those matters, they were kept in the ordinary course of

the regularly conducted business activity of Facebook, and they were made by

Facebook as a regular practice; and

b.      such records were generated by Facebook's electronic process or system

that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage

medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are

true duplicates of the original records; and

1

2. the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature

2